ELLA E. RUSSELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102162.   Promulgated October 22, 1941.

*Wallace C. Magathan, Esq.*, and *Herman A. Tufel, Esq.*, for the petitioner.

*Roy N. McMillan, Esq.*, for the respondent.

OPINION.

Smith: The respondent's contention is that the trust conveyance described above conferred upon the petitioner such complete enjoyment of and control over the trust property, both as to income and principal, as to render her taxable under the broad provisions of section 22 (a) of the Revenue Act of 1936 on all of the income therefrom, including the profits from the sale of a portion of the trust properties.

Among the cases relied upon by the respondent are *H. S. Richardson*, 42 B. T. A. 830; affd. (C. C. A. 2d Cir.), 121 Fed. (2d) 1. In that case the taxpayer's wife transferred to him in trust for the benefit of their five children certain shares of stock which the taxpayer had previously conveyed to her as a gift. In the trust instrument the taxpayer, as trustee, was given broad powers over the trust property, including the right to expend the trust income in payment of premiums for life insurance upon his own or his wife's life, and to make loans to either of them without security or liability for any loss. In addition, the taxpayer had the right to terminate the trusts at any time and to take over the trust property as his own. We held that under the trust conveyance the taxpayer acquired such substantial rights of ownership in the trust property as to make him taxable personally on all of the trust income. In our opinion we said:

Under the facts in the instant case we are not so much concerned with the refinements of title to the property which has been ostensibly passed around the immediate family circle as with the actual dominion and control over the property. Here, the property and the income therefrom is so clearly subject to the petitioner's unfettered command that they are, in substance, his and, even though he did not see fit to use the property or the income during the taxable year, the latter may be taxed to petitioner as his income under the broad general tax provisions of section 22 (a) *supra*. Cf. *Corliss* v. *Bowers*, 281

U. S. 376; *Burnet v. Wells*, 289 U. S. 670; *DuPont v. Commissioner*, 289 U. S. 685; *Helvering v. Clifford*, 309 U. S. 331; *Lehman v. Commissioner*, 109 Fed. (2d) 99, affirming 39 B. T. A. 17; *City National Bank & Trust Co. v. United States*, 109 Fed. (2d) 191; *Albert Penn v. Commissioner*, 109 Fed. (2d) 954; *First National Bank of Chicago v. Commissioner*, 110 Fed. (2d) 448; *Cox v. Commissioner*, 110 Fed. (2d) 934; *Helvering v. Hormel*, 111 Fed. (2d) 1; and *Morton Stein*, 41 B. T. A. 994.

The instant case is not distinguishable from the *Richardson* case either in principle or on the facts, except that here the petitioner had no specific power under the trust indenture to terminate or revoke the trust, and thus acquire the trust property as her own. However, the petitioner did have the express right at any time to withdraw any part or all of the principal of the several trusts for her own use. By that method she could just as effectually terminate the trusts.

Evidence was adduced at the hearing of this proceeding through oral testimony of Norman F. S. Russell, settlor of the trusts, and George E. Lloyd, the officer of the corporate trustee who assisted in drawing up the trust agreement, that it was the intention and understanding of the settlor and all of the parties concerned that the petitioner was not to be permitted to take down any substantial part of the principal of the trusts except in the case of some emergency, and then only with the consent of the cotrustee and with authorization from the court having jurisdiction of the administration of the trust estate. These conditions, however, were not put in the trust agreement and no good reason is offered for their omission. As the trust instrument stands, there is no restriction or limitation on the petitioner's right to take down any part or all of the principal of the trusts for her own use. The provision in the trust agreement is that:

* * * the wife of the Settlor during her life shall be entitled to receive all net income payable to minors, and such part or parts or the whole of the principal of the share of each minor as she may, by writing lodged with the Trustees, direct, for application to her own use or the maintenance, education, care and support of children and issue as she shall determine, and without liability to account for such application; * * *

It is to be noted that provision is made in a separate paragraph of the trust instrument for the invasion of the principal of any of the trusts where in the discretion of the trustees it becomes necessary by reason of "misfortune, lack of income or other cause" for the care, maintenance, and support of any of the beneficiaries. This provision, however, can not be construed to subject the petitioner's right to withdraw the principal of the trust to any fiduciary discretion. It contemplates a situation which might arise among the several beneficiaries independently of any volition on the part of the petitioner.

The trust agreement was carefully drawn after long consideration by the settlor and his wife and with the advice and assistance of an officer of the corporate trustee with whom they had discussed the matter on several occasions. We must assume, notwithstanding the testimony of the settlor and the trust officer, that the trust instrument was drawn in accordance with the intentions of the settlor. In any event the plain provisions of the trust agreement can not be altered by oral testimony. The rulings stated in Scott on Trusts, vol. II, § 164.1, are as follows:

In determining the terms of the trust, resort is had in the first place to the instrument if any under which the trust is created. As to any matter expressly covered by the instrument, the provisions of the instrument, if unambiguous, determine the terms of the trust. In such a case, extrinsic evidence in the absence of fraud or mistake is not admissible to vary or add to the terms of the instrument. * * *

    *     *     *     *     *     *     *

* * * Such evidence [parole evidence] is inadmissible not only where it contradicts or is inconsistent with express provisions of the trust instrument, but also where it changes the legal effect of the instrument, that is where if given effect it would lead to results which would not be reached in the absence of such evidence. * * *

In *Commissioner* v. *McIlvaine* (C. C. A., 7th Cir.), 78 Fed. (2d) 787, it was said that:

* * * While the intent of the parties is a prime factor in construing such an instrument [trust instrument] and in case of doubt is accorded high evidentiary value, yet the instrument itself, where it is sufficiently plain, must determine its character and scope. *Colton* v. *Colton*, 127 U. S. 300, 8 S. Ct. 1164, 32 L. Ed. 138; *State Savings Loan & Trust Co.* v. *Commissioner*, 63 F. (2d) 482 (C. C. A. 7); *Hubbell* v. *Burnet*, 46 F. (2d) 446 (C. C. A. 8).

See also *Mountain Producers Corporation*, 34 B. T. A. 409, 423, and authorities there cited.

The express provisions of the trust agreement here with respect to the petitioner's rights to the income as well as the principal of the trusts are clear and unambiguous and are binding upon the parties in the determination of their resulting tax liabilities.

It follows that all the income of the trusts, including the profits from the sale of a portion of the principal, is taxable to the petitioner by reason of her right to the complete use and enjoyment of such income.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK dissents.

------

MELLOTT, dissenting: The rule applied by this Board and the Circuit Court of Appeals for the Second Circuit (121 Fed. (2d) 1) in the *Richardson* case seems to me to be inapplicable under the facts

before us. In the cited case the settlor's husband had recently given the property to her. She conveyed the property to him as sole trustee, giving him the power to cancel and terminate the trust at any time and to take the trust corpus free from all trusts. He was given full power and authority in his absolute and uncontrolled discretion to sell or exchange the trust property at any time for such price as he should deem advisable and to reinvest the proceeds in any character of property. It was pointed out that he had complete control of the use of the *res* and the income therefrom, even to the extent of paying the premiums for life insurance upon the lives of himself and his wife. Holding was made, in which I concurred, that the property and the income were so clearly subject to his unfettered command that they were, in substance, his.

In the instant proceeding petitioner had not previously owned the property; she is not the sole trustee; and it is obvious that the settlor was motivated primarily by a desire to create special trusts for his children as to four-tenths of the trust estate. The evidence indicates that the provision under which the Board holds that she could just as effectively terminate the trust as could the petitioner in the *Richardson* case was included in the trust instrument upon the suggestion of the trust officer; that it was adopted only after full understanding of the parties that it was to be used only in an emergency arising out of the income of the trust "evaporating" or decreasing; and that the trustees would not pay out money on a request of petitioner until a finding was made by a court having jurisdiction that a real emergency existed. Although the trust instrument does not contain these restrictions, it appears that the trust has always been operated in accordance with this understanding; that there has been no change in the corporate trustee; that there has been distributed to petitioner only the net income of the trust; and that no part of the corpus has ever been distributed to her.

The trust by its terms is to be construed under, and in accordance with, the laws of Pennsylvania. A cursory examination of the decisions by the courts of that state does not indicate that they would hold that the trust was without substance, that the settlor had made a complete *inter vivos* gift of the property to his wife, or that she had become owner of the trust *res* by operation of law. There seems to be no contention by the respondent or holding by the majority that capital gains under the laws of Pennsylvania must be included in trust income. They are taxable to the petitioner only in the event that she is the owner of the trust corpus or it is so clearly subject to her unfettered command as to be hers. Being of the opinion that no such conclusion is justified, I respectfully note my dissent.

ARUNDELL agrees with this dissent.